UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES of AMERICA  )<br><br>v.                          )<br>  )<br>ISIAH LYONS,                )<br>  )<br>    Defendant.          )<br>  ) | Criminal No.<br>25-10032-FDS |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

**SAYLOR, J.**

Defendant Isiah Lyons was convicted after a five-day jury trial of conspiracy to distribute and to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846. He has moved for a judgment of acquittal under Fed. R. Crim. P. 29(c)(1). For the reasons set forth below, the motion will be denied.

## I.      Background

On January 13, 2026, following a five-day trial, a jury found defendant guilty of conspiracy to distribute and to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846 and 841(b)(1)(A)(viii). The evidence at trial included the following.

An individual named Bill Phim made three sales of 1,000 methamphetamine pills to an undercover officer. There was evidence that defendant agreed to supply the pills to Phim immediately prior to each of the three deals. There was also evidence of a fourth transaction, also involving 1,000 methamphetamine pills, supplied to defendant at his apartment on Broadway Street in Lowell by a witness who later agreed to cooperate with the government.

After defendant's arrest, a search of his apartment revealed a large quantity of the same kind of pills in his bedroom.

With one minor exception, the pills involved had a uniform appearance:  they were orange and circular, with the letters "AD" imprinted on one side and the number "30" on the other.[1]  Defendant and his coconspirators referred to the pills as "oranges."  Chemists who sampled and analyzed the pills testified that they contained a mixture of methamphetamine and caffeine.

The cooperating witness testified that he distributed "oranges" between 2020 and April 2023, when he was arrested.  The "oranges" were supplied by an individual called "Crook" or "Crook Blindness."  The cooperating witness testified that he saw the pills being produced in a pill press, and that he knew that the pills contained methamphetamine.  Defendant obtained the pills he provided to Phim from the cooperating witness.  There were various text messages in furtherance of the conspiracy involving defendant, the cooperating witness, "Crook," Phim, and an individual named Owen Landry.

 Defendant was arrested at the time of the execution of the search warrant at his apartment, and was advised that he was being charged with "trafficking in methamphetamine." He was later arraigned and indicted in state court on those charges.  He subsequently pleaded guilty to state charges of possession with intent to distribute methamphetamine.  During the plea hearing in Superior Court, he admitted the truth of the fact that he possessed approximately 92 grams of methamphetamine in his bedroom at the time the search warrant was executed.  His arrest and arraignment occurred during the course of the conspiracy, although his change of plea and admission to sufficient facts did not.

---

[1] The apartment search also uncovered seven methamphetamine pills that were packaged differently.

At the close of the government's case at trial, defendant made a motion for judgment of acquittal under Rule 29. The Court denied the motion, concluding that the government had presented sufficient evidence to sustain a conviction. *See* Fed. R. Crim. P. 29(a).

## II.    **Legal Standard**

A judgment of acquittal should be granted only when the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the jury's verdict, are insufficient for a rational factfinder to conclude beyond a reasonable doubt that the defendant committed each element of the charged offense. *See United-States v. Reyes-Ballista*, 146 F.4th 100, 108-09 (1st Cir. 2025). The court must consider all the evidence, both direct and circumstantial, and resolve all evidentiary conflicts in favor of the verdict. *Id.* The court may not, however, assess the credibility of the witnesses, as that is "a role reserved for the jury." *United States v. Rivera-Rodriguez*, 617 F.3d 581, 596 (1st Cir. 2010) (quoting *United States v. Troy*, 583 F.3d 20, 24 (1st Cir. 2009)).

The government need not "succeed[] in eliminating every possible theory consistent with the defendant's innocence." *Id.* But when the government's evidence does not outweigh likely theories of innocence, acquittal is required. *See United States v. Flores-Rivera*, 56 F.3d 319, 323 (1st Cir. 1995). As the Court of Appeals has consistently explained:

> If the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, this court must reverse the conviction. This is so because where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence viewed in the light most favorable to the prosecution, a reasonable jury must necessarily entertain a reasonable doubt.

*United States v. Coleman*, 149 F.4th 1, 42 (1st Cir. 2025) (citation modified). Thus, while evidentiary disputes are resolved in favor of the verdict, a jury may not assume away "equal or nearly equal circumstantial support" for a theory of innocence. *See id.*

3

Nevertheless, this standard is a "formidable" one, and poses an "uphill battle" to defendants challenging convictions based on the lack of sufficient evidence to convict. *United States v. Lipscomb*, 539 F.3d 32, 40 (1st Cir. 2008). "[D]espite the prosecution-friendly overtones of the standard of review," however, "[review] of sufficiency challenges is not an empty ritual." *United States v. de la Cruz–Paulino*, 61 F.3d 986, 999 n.11 (1st Cir. 1995) (citations and internal quotations omitted).

III.   **Analysis**

Broadly, defendant contends that the government failed to prove the existence of a conspiracy to distribute methamphetamine specifically, rather than merely a conspiracy to distribute controlled substances. His precise argument, however, is somewhat unclear.

His opening brief styles the challenge as one to the sufficiency of the evidence supporting his conviction. (Dkt. No. 118). Its opening paragraph also argues that "[a]djudication of guilty would therefore violate [defendant's] right to due process under the Fifth Amendment." (*Id.* at 1).[2] Defendant's reply then argues not only that the evidence was insufficient to support his conviction, but also that allowing the government to prove the allegations of the indictment through evidence of a conspiracy to distribute controlled substances generally would "constructively amend" the indictment and therefore "offend[] the Fifth Amendment requirement of grand jury presentment and the Sixth Amendment requirement of charge by indictment." (Dkt. No. 137 at 3). Even assuming that defendant properly raised both the sufficiency-of-evidence and constructive-amendment arguments in his opening brief, both arguments fail.

_____

[2] The Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Court, therefore, interprets this reference to due process as arguing that a conviction not supported by evidence permitting the jury to find guilt beyond a reasonable doubt would violate defendant's due-process rights.

### A.    <u>Sufficiency of the Evidence</u>

As discussed above, defendant contends that the evidence introduced at trial was insufficient to support his conviction because "the government did not introduce evidence that at least two people knew the pills' key ingredient while [defendant] was distributing them," and there was therefore insufficient evidence to prove that a conspiracy to distribute methamphetamine specifically existed. (Dkt. No. 118 at 4 (emphasis omitted)). The government responds that it needed only to prove an agreement to distribute a controlled substance, not an agreement to distribute methamphetamine specifically, for there to be sufficient evidence to sustain the conviction. (Dkt. No. 128 at 7-13).[3]

The key dispute, then, is whether the sufficiency-of-the-evidence analysis examines whether the government proved the existence of the precise conspiracy charged in the indictment—that is, one with the same conspirators and the same object—or whether the government proved the existence of a conspiracy to violate the Controlled Substances Act that the defendant knowingly and willfully joined.

The Court concludes that the latter framing must be correct. Were it otherwise, the Court of Appeals' entire body of precedent regarding "prejudicial variance" would be rendered illogical. That court has long recognized that "a defendant cannot upset a conviction by showing that the government proved understandings or agreements different from those charged [in the indictment] unless the 'variance' between the evidence and the charges prejudiced the defendant." *United States v. Glenn*, 828 F.2d 855, 858 (1st Cir. 1987) (Breyer, J.). "So long as the statutory violation remains the same, the jury can convict even if the facts are somewhat

---

[3] The government also contends, in the alternative, that the evidence was sufficient to prove an agreement to distribute methamphetamine specifically. (Dkt. No. 128 at 18-19). The Court addresses this point in the following section.

different than charged—so long as the difference does not cause unfair prejudice." *United States v. Wihbey*, 75 F.3d 761, 773 (1st Cir. 1996) (quoting *United States v. Twitty*, 72 F.3d 228, 230 (1st Cir. 1995)) (citation modified).

To establish whether a prejudicial variance requiring acquittal or a new trial has occurred, a court must consider three issues:

> (1) Is the evidence sufficient to permit a jury to find the [conspiracy] that the indictment charges? (2) If not, is it sufficient to permit a jury, under a proper set of instructions, to convict the defendant of a related, similar conspiracy [to violate the same statute]? (3) If so, does the variance affect the defendant's substantial rights or does the difference between the charged conspiracy and the conspiracy proved amount to "harmless error?"

*United States v. Abdelaziz*, 68 F.4th 1, 41 (1st Cir. 2023) (quoting *Glenn*, 828 F.2d at 858).

If failure to prove the precise agreement charged in the indictment meant that there was insufficient evidence to support a defendant's conviction, then steps two and three of this framework would be unnecessary. If a court found that step one favored the defendant, it would be required to grant an acquittal, regardless of whether some other conspiracy might have been proved or whether the difference between the two prejudiced the defendant. But courts do not follow that approach; instead, all three questions must be answered in the affirmative for the defendant to prevail. Furthermore, the Court of Appeals has explicitly distinguished between sufficiency-of-the-evidence and prejudicial-variance challenges: "A claim of prejudicial variance is not a challenge to the sufficiency of the evidence, like other Rule 29 challenges," but instead is a "legal claim that requires a sufficiency inquiry as part of the analysis." *United States v. Vavic*, 139 F.4th 1, 30 (1st Cir. 2025).

Thus, in a challenge to the sufficiency of the evidence supporting a conspiracy conviction, a court should determine whether the evidence was sufficient to prove a conspiracy

to violate the relevant statute, not whether the precise conspiracy alleged in the indictment existed.

Applying that standard here, there was overwhelming evidence that defendant conspired to distribute and to possess with intent to distribute a controlled substance. It is well-established that while the government must prove that the defendant knowingly joined a conspiracy involving a controlled substance to obtain a conviction under 21 U.S.C. § 846, it need not prove that he knew what the specific controlled substance was. *United States v. Rivera-Ruperto*, 846 F.3d 417, 433 (1st Cir. 2017); *see also United States v. Castro Alavez*, 167 F.4th 1056, 1065 (9th Cir. 2026); *United States v. Edwards*, 111 F.4th 919, 928-29 (8th Cir. 2024); *United States v. Gonzalez*, 737 F.3d 1163, 1168 (7th Cir. 2013); *United States v. Daniels*, 723 F.3d 562, 575 n.19 (5th Cir. 2013); *United States v. Davis*, 690 F.3d 127, 131 (2d Cir. 2012). Similarly, proof of a substantive drug-trafficking offense under § 841 does not require proof that the defendant had knowledge of a specific type or quantity of controlled substances. *See United States v. Collazo-Aponte*, 281 F.3d 320, 326 (1st Cir. 2002) ("The plain language of § 841(b) requires the government to prove *only* that the offense 'involved' a particular type and quantity of drug, not that the defendant knew that he was distributing that particular drug type and quantity"); *United States v. Mejia Romero*, 822 F. App'x 1, 3-4 (1st Cir. 2020) (same); *see also United States v. Collazo*, 984 F.3d 1308, 1329 (9th Cir. 2021) (en banc) (recognizing that "all [circuits] have held that § 841(b)(1) does not require a finding of a defendant's mens rea with respect to the drug type and quantity"). Rather, it is sufficient to prove "that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was." *McFadden v. United States*, 576 U.S. 186, 192 (2015); *see United States v. Kairouz*, 751 F.2d 467, 468 (1st Cir. 1985).

There was extensive proof at trial that defendant knowingly and intentionally joined a conspiracy to distribute a controlled substance. Among other evidence, the text messages between defendant and Bill Phim proved that he knew he was obtaining a controlled substance—a "pack" of "oranges"—to provide to Phim, who would then resell them to another customer. (Trial Tr. Day 4 48-53). Text messages between defendant and the cooperating witness also showed that he was obtaining "oranges" from the cooperating witness. (*Id.* 27-29). And, at trial, defense counsel suggested that defendant believed he was distributing Adderall, not methamphetamine. But Adderall is itself a controlled substance; accordingly, he would be guilty even if he did genuinely believe he was distributing Adderall. *See United States v. Lamartiniere*, 100 F.4th 625, 630 n.5 (5th Cir. 2024); 21 U.S.C. § 812, sched. III(a)(1) (listing amphetamine, the active ingredient in Adderall).

For those reasons, defendant cannot show that the evidence introduced at trial, viewed in the light most favorable to the verdict, was insufficient for the jury to conclude beyond a reasonable doubt that he was guilty of conspiring to distribute and to possess with intent to distribute a controlled substance.

### B.    **Prejudicial Variance**

Turning to the issue of constructive amendment or prejudicial variance, defendant likely waived any such claim by not raising the argument in his opening motion. To the extent that such claim was not waived, however, it would still fail.

Although defendant's reply brief argues that the government's proof of the broader conspiracy would "constructively amend the indictment," his claim is really one of prejudicial variance, not constructive amendment. (Dkt. No. 137 at 3). "A constructive amendment occurs when the government's evidence or arguments or the court's jury instructions alter the terms of an indictment such that the defendant is effectively charged with a different offense than the one

8

returned by the grand jury." *United States v. Katana*, 93 F.4th 521, 530 (1st Cir. 2024). "To succeed on a constructive amendment argument . . . , a defendant generally must show that the proceedings altered the indictment with respect to a 'statutory element of the offense.'" *Id.* at 531 (quoting *United States v. Lopez-Diaz*, 794 F.3d 106, 118 (1st Cir. 2015)) (citation modified). By contrast, a variance occurs "when the government relies at trial on different facts than those alleged in the indictment to prove the same offense." *Id.* at 530. Defendant does not argue that the government effectively invited the jury to convict him of a different offense than the indictment charged; instead, he argues that the facts the government adduced at trial proved a conspiracy with a different object (to distribute controlled substances generally) than what was alleged in the indictment (to distribute methamphetamine specifically). Accordingly, defendant's claim is one of prejudicial variance.

As described above, the prejudicial-variance analysis proceeds in three steps. First, the court asks whether the jury could have found that the conspiracy charged in the indictment existed; if not, the court then asks whether the jury could have found that some other conspiracy to violate the same statute existed; and third, the court asks whether the variance between the two prejudiced the defendant. *See Abdelaziz*, 68 F.4th at 41.

Beginning at the first step, the government did introduce sufficient evidence to prove a conspiracy to distribute and to possess with intent to distribute methamphetamine. There was evidence from which the jury could conclude that both "Crook Blindness" and the cooperating witness agreed to distribute methamphetamine specifically and that defendant knowingly and willfully joined in that agreement. The cooperating witness testified that he witnessed "Crook" manufacturing the fake Adderall pills in a pill press, so "Crook" necessarily knew that they contained methamphetamine. (Trial Tr. Day 4 160:25-161:19). The cooperating witness testified

that he never believed the "oranges" to be real Adderall pills, both because of the quantity in which they could be obtained and their appearance.  (Trial Tr. Day 4 157:8-15, 160:18-22).  And he also testified to the effect that the pills had on those who used them:  they were "awake and energetic," suggesting that they contained some form of stimulant or amphetamine derivative.  (Trial Tr. Day 4 160:8-13).  From that evidence, the jury could have concluded that the cooperating witness agreed with "Crook" to distribute methamphetamine in particular, rather than to distribute any controlled substance.

There was also evidence from which the jury could have concluded that defendant himself knew that the "oranges" contained methamphetamine.  For example, defendant was arrested on February 4, 2023, and was informed at that time that he was charged with trafficking in methamphetamine.  (Trial Tr. Day 3 50:18-21, 51:15-21).  He pleaded guilty to that offense on August 29, 2024, and the plea colloquy included an admission that, at the time of his arrest on February 4, 2023, he possessed approximately 92 grams of methamphetamine in his bedroom.  (Trial Tr. Day 3 57:11, 58:4-7).  While knowledge of the particular substance involved is not an element of the offense of drug trafficking under Massachusetts law, the arrest and the plea are circumstantial evidence that he knew that the "oranges" contained methamphetamine.  And based on that circumstantial evidence, in addition to the evidence concerning quantity, price, and appearance about which the cooperating witness testified, the jury could have found that defendant knew the pills contained methamphetamine during the time of the charged conspiracy.

For those reasons, there was sufficient evidence for the jury to find that the conspiracy charged in the indictment existed, and that its object involved methamphetamine.  But even assuming there were not, defendant would not be able to show a prejudicial variance.  As discussed above, there was overwhelming evidence that defendant knowingly and willfully

joined a conspiracy to distribute a controlled substance.  And defendant cannot show that any prejudice resulted from the alleged variance.  Prejudice results where a variance "affects the defendant's substantial rights," such as "the right to have knowledge of the charge sufficient to prepare an effective defense and avoid surprise at trial" and "the right to prevent a second prosecution for the same offense."  *Katana*, 93 F.4th at 530 (quoting *United States v. Vega-Martinez*, 949 F.3d 43, 51 (1st Cir. 2020)).  But any variance here, even assuming one existed, did not affect defendant's substantial rights.  Whether proving a conspiracy to distribute controlled substances generally or to distribute methamphetamine specifically, the government would have relied on evidence of the same transactions and communications among the same individuals.  *Cf. Stirone v. United States*, 361 U.S. 212, 213-15 (1960) (finding constitutional violation where indictment charged interference with sand trade into Pennsylvania and government introduced evidence of interference with steel trade out of Pennsylvania); *Katana*, 93 F.4th at 532 (noting that *Stirone* "is more appropriately characterized as a prejudicial variance case, rather than a constructive amendment case").

In sum, the evidence was sufficient for the jury to convict defendant of the crime of conspiracy to distribute and to possess with intent to distribute a controlled substance, and no prejudicial variance occurred between the conspiracy charged in the indictment and the one proved at trial.  For those reasons, defendant's motion for a judgment of acquittal will be denied.

## IV.    Conclusion

For the foregoing reasons, defendant's motion for a judgment of acquittal is DENIED.

**So Ordered.**


/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  April 22, 2026                         United States District Judge

11